# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| KAMALESH KUMAR SIDDHANTAM | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 3:17-CV-2001-S |
| | § | |
| JEFERSON B. SESSIONS, III, et al. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction [ECF No. 18]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge David C. Godbey to the docket of this Court on March 8, 2018.

This case arises out of the denial of an I-130 Petition for Alien Relative ("I-130"). Siddhantam is a citizen of India and has resided in the United States since being admitted on an F-1 visa in 2004. Am. Compl. ¶ 13. Since that visa expired in 2005, he has been an illegal resident of the United States. Mot. to Dismiss ("Mot.") 1. On August 2, 2007, Siddhantam married Vanessa Lopez, a United States citizen. Am. Compl. ¶ 14. On December 16, 2007, Lopez filed an I-130 on Siddhantam's behalf. *Id.* ¶ 15. However, she later abandoned the petition, which resulted in its denial. *Id.* ¶ 17. Siddhantam and Lopez divorced on September 14, 2010. *Id.* ¶ 18

Siddhantam married Tanyett Smith, a United States citizen, on December 1, 2010. *Id.* ¶ 19. Smith filed an I-130 on Siddhantam's behalf on December 30, 2010. *Id.* ¶ 20. That I-130 was denied on Immigration and Nationality Act ("INA") § 204(c) (marriage fraud) grounds. *Id.* ¶ 22.

Smith appealed the denial to the Board of Immigration Appeals ("BIA"). Mot. 2. The BIA remanded the record to United States Citizenship and Immigration Services ("USCIS"), finding that USCIS had misrepresented the record and failed to maintain a complete record. Am. Compl. ¶ 24.

After waiting two years for a decision from USCIS, Siddhantam filed for a writ of mandamus in the Northern District of Texas. *Id.* ¶ 25. Days later, USCIS sent officers to Siddhantam's apartment to perform an unannounced inspection. *Id.* ¶ 26. After that, USCIS Officer Cherry allegedly called Smith repeatedly, arranged a meeting with her, and attempted to pressure her into signing a confession. *Id.* ¶¶ 27-28. Siddhantam and Smith's attorneys confronted Officer Cherry about speaking to Smith despite knowing that Smith was represented by counsel in ongoing litigation. *Id.* ¶ 29. Ultimately, the mandamus suit was dismissed as moot. *Id.* ¶ 25.

On November 13, 2015, USCIS again denied the I-130. *Id.* ¶ 33. The denial was based on the finding that Siddhantam's marriage to Lopez was fraudulent. *Id.* Smith appealed that denial to the BIA. Mot. 2. On April 17, 2017, the BIA denied the second appeal. Am. Compl. ¶ 34. On May 17, 2017, Siddhantam filed a petition for review in the Fifth Circuit. Mot. 2. On July 28, 2017, the Fifth Circuit transferred the case to this Court. *Id.* Siddhantam filed his Amended Complaint on October 5, 2017. *Id.* In it, he brings claims for violation of his Fifth Amendment Due Process rights and arbitrary agency action in violation of the Administrative Procedure Act ("APA"). Am. Compl. ¶¶ 35-65. He also seeks a declaratory judgment as to the bona fides of his marriage. *Id.* ¶¶ 66-74. Defendants moved to dismiss Siddhantam's claims on two grounds: (1) lack of standing and (2) failure to state a claim.

## II. LEGAL STANDARDS

### A. *Rule 12(b)(1) Standing*

"Federal courts have no jurisdiction unless a case or controversy is presented by a party with standing to litigate." *De Leon v. Perry*, 975 F. Supp. 2d 632, 645 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015). A court properly dismisses a case where it lacks the statutory or constitutional power to decide it. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Dismissal for lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161.

Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1). *See Hollis v. Lynch*, 121 F. Supp. 3d 617, 626 (N.D. Tex. 2015) (noting that "whether a party has proper standing is a question of subject matter jurisdiction" (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006))). The requirement that a litigant must have standing "to invoke the power of a federal court is perhaps the most important of [the case-or-controversy] doctrines." *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

The requirement of standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury cannot be merely

3

"conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant" rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Redressability requires that it is likely, "as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon*, 426 U.S. at 38, 43). The party invoking federal subject matter jurisdiction bears the burden of establishing each element. *Ramming*, 281 F.3d at 161.

### B. *Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

### A. *Standing*

As a threshold matter, Defendants contend that the Court must dismiss Siddhantam's claims because Siddhantam, as the beneficiary of the I-130, lacks standing to challenge its denial. Additionally, with respect to the APA claim, Defendants contend that Siddhantam is not "arguably within the zone of interests to be protected or regulated by the statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).

The regulations implementing the INA only allow "affected parties" to appeal unavorable decisions. 8 C.F.R. § 103.3(a)(1)(iii)(B). An "affected party" is "the person or entity with legal standing in a proceeding." *Id.* The beneficiary of a visa petition is expressly excluded from this definition. *See id.* Thus, Defendants argue, Siddhantam, as a beneficiary, lacks standing to bring suit for judicial review of an I-130. *See, e.g., Kale v. U.S. I.N.S.*, 37 F. App'x 90, 2002 WL 1022012, at *2 (5th Cir. 2002) (holding that beneficiary lacked standing to move for reconsideration because beneficiary of visa petition is not "affected party"); *Desmore v. Dep't of Homeland Sec.*, Civ. A. No. G-14-191, 2016 WL 561176, at *4 (S.D. Tex. Feb. 12, 2016)

("[Plaintiff] is an illegal resident attempting to challenge a decision for which he was the primary beneficiary. . . . [O]nly . . . the petitioner[] has standing to challenge the sufficiency of the BIA's denial.").

"The Fifth Circuit has not specifically determined whether a visa beneficiary has standing to file suit to challenge a rejected I-130 form." *Desmore*, 2016 WL 561176, at *3 (citing *Khalid v. DHS, USA*, 1 F. Supp. 3d 560, 568 (S.D. Tex. 2014)). However, "district courts in other circuits have repeatedly held that the beneficiary of an immigrant petition lacks Article III standing to challenge the denial of that petition." *Gene's Mach., Inc. v. Dep't of Homeland Sec.*, Civ. A. No. V-11-4, 2012 WL 1067557, at *6 (S.D. Tex. Mar. 28, 2012) (collecting cases in I-140 and I-130 contexts); *see also, e.g., Desmore*, 2016 WL 561176, at *4; *Olugbenle v. Heathman*, Civ. A. No. H-14-3085, 2015 WL 3546996, at *5 (S.D. Tex. June 8, 2015) ("[T]o the extent the plaintiff is himself challenging the denial of the I-130, which he did not file but which was filed on his behalf, the case law supports the absence of his standing to do so."); *Opoku-Agyeman v. Perez*, 886 F. Supp. 2d 1143, 1148 (W.D. Mo. 2012) (dismissing beneficiary from suit challenging I-130 denial for lack of standing); *Li v. Renaud*, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010) ("A District Court action for judicial review of an administrative decision concerning a Form I-130 Petition may be brought only by the Petitioner . . . not by the Beneficiary . . . .").

Siddhantam does not cite any case law to the contrary. In fact, he states that "the law admittedly favors the government in that aspect" and that he "would not have stepped into this court to ligate this matter" if it were a straightforward case challenging an I-130 denial. Pl.'s Br. 2. Based on the persuasive precedent set by district courts around the country and the lack of

6

contrary case law in either party's briefing, the Court finds that Siddhantam lacks standing to challenge the denial of Smith's I-130.[1]

Siddhantam responds[2] that the analysis above does not apply because he is challenging the lawfulness of the INA § 204(c) marriage fraud finding and alleged affirmative misconduct by the government. Following this line of reasoning, he asks the Court to sidestep the "affected party" analysis altogether and instead perform a traditional Article III standing analysis. According to Siddhantam, he has standing under the traditional test because: (1) the loss of the right to have a bona fide I-130 petition approved and the improper issuance of a marriage fraud finding constitute injuries-in-fact; (2) Defendants' unlawful acts directly caused the marriage fraud finding; and (3) a court order enjoining and estopping the Defendants from enforcing any current or future marriage fraud finding, vacating the INA § 204(c) order, and declaring that Siddhantam's current marriage is bona fide would redress his injuries. Finally, Siddhantam argues that the "zone of interests" test does not apply because Siddhantam himself is the subject of the contested regulatory action. *See Corrosion Proof Fittings v. E.P.A.*, 947 F.2d 1201, 1209 (5th Cir. 1991).

Siddhantam's argument is unavailing. First, the Southern District of Texas concluded in the I-140 Immigrant Petition for Alien Worker context that "any legally protected interest flowing from the [petition] belongs" to the petitioner. *Gene's Mach., Inc.*, 2012 WL 1067557, at *7. The *Gene's Machine* court concluded, "the denial of the petition . . . could not have injured the

---

[1] Siddhantam cited one potentially favorable case at oral argument and in his briefing on the zone of interests analysis. *See Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006). *Bangura* is distinguishable on two critical points. First, the *Bangura* court only found that the beneficiary was "adversely affected" within the meaning of the APA. 434 F.3d at 500. The court explicitly held that the beneficiary "[did] not have constitutional standing to challenge the INS's denial of [the] petition." *Id.* Second, both the petitioner and the beneficiary were parties to the *Bangura* action. In the instant case, Siddhantam has been unable or unwilling to explain to the Court why Smith, the affected party, chose not to participate. Thus, *Bangura* does not support Siddhantam's argument for standing.

[2] Defendants suggest that the Court may strike Siddhantam's response as untimely because he failed to move for leave to file it four days late. However, he asked the Court to excuse his late filing, and Defendants indicated that they were unopposed to that motion. The Court granted the motion to excuse the late filing on February 23, 2018 [ECF No. 31].

[beneficiaries]." *Id.* This reasoning is highly persuasive here, and the Court finds that Siddhantam has not suffered an injury-in-fact under the traditional standing analysis. Further, an INA § 204(c) "order" is, in reality, merely a finding that does not control whether or not an I-130 petition is approved. *See Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 856 (11th Cir. 2012) ("When determining that a visa petition should be denied based upon INA § 204(c), the USCIS ordinarily cannot give conclusive effect to determinations made in prior proceedings, but should make an independent conclusion based on the evidence of the record." (citing *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990))). Thus, only evidence of a prior fraudulent marriage will conclusively bar the approval of future I-130 petitions, rendering the injurious effect of an INA § 204(c) order merely conjectural or hypothetical.

Finally, the BIA affirmed USCIS's decision in the instant case not only because there was evidence of a prior fraudulent marriage but also because Smith failed to establish that her marriage to Siddhantam was bona fide.[3] *See* Am. Pet. Ex. A. The finding that Siddhantam's current marriage to Smith is not bona fide is distinct from the INA § 204(c) finding, which is based on Siddhantam's prior marriage to Lopez. Accordingly, even if the Court deemed the INA § 204(c) finding unlawful, doing so would not redress Siddhantam's alleged injury (the denial of the I-130 petition). The petition still would have been denied based on Smith's failure to establish that the marriage is bona fide.

Because Siddhantam does not have standing under either the "affected party" analysis or the traditional Article III analysis, he does not have standing under the APA. *See Patchak*, 567 U.S. at 224 ("This Court has long held that a person suing under the APA must satisfy not only

---

[3] In support of its finding that Smith and Siddhantam's marriage was not bona fide, USCIS noted, *inter alia*, that another woman was living with Siddhantam during the site visit and that Smith filed applications for public benefits that contained unknown residential addresses and claimed that Smith was single. Am. Pet. Ex. A.

Article III's standing requirements, but an additional test . . . ."). For the foregoing reasons, the Court finds that, no matter the standard applied, Siddhantam lacks standing. Thus, the Court grants the Motion to Dismiss on this ground.

### B. *Failure to State a Claim*

#### i. *Due Process*

Even if Siddhantam has standing to bring the instant suit, he has failed to state a claim. Siddhantam claims that he has a valid due process claim predicated on his "protected property interest in the adjudication of I-130 petitions listing him as a beneficiary." Am. Compl. ¶ 37. However, the Supreme Court has made it clear that an alien in Siddhantam's situation has no protected property interest in a visa application. *See Kerry v. Din*, 135 S. Ct. 2128, 2133-35 (2015) ("To the extent that [the petitioner] received any explanation for the Government's decision [to deny the beneficiary admission to the United States], this was more than the Due Process Clause required."). In *Kerry*, the Supreme Court rejected a due process challenge to the denial of an immigrant visa where "the Government ha[d] not refused to recognize" the marriage, and the petitioner remained free to live with the beneficiary "anywhere in the world that both individuals [were] permitted to reside." *Id.* at 2138.

Siddhantam attempts to circumvent *Kerry* by claiming that it is "so distinguishable as to lack even persuasive authority." Pl.'s Br. 9. First, he notes that *Kerry* involved the doctrine of consular nonreviewability. *Id.* Second, the *Kerry* plaintiffs had an approved I-130, but the beneficiary's visa application was rejected after his interview with the U.S. Embassy. *Id.* at 10. Finally, the constitutional right in *Kerry*, the right to reside with one's spouse, was less traditional than the rights Siddhantam asserts. *Id.*

At least one district court has relied on *Kerry* in the I-130 denial context. In *Desmore*, the Southern District of Texas held:

> Even if Desmore claimed a liberty or property interest in her I-130 form, the power to expel or exclude aliens is a fundamental sovereign right. In *Kerry*, the Supreme Court stated that a person is not deprived of any life, liberty, or property interest when the government denies a spouse's admission to the United States.

2016 WL 561176, at *5 (citations omitted). The Court finds that *Kerry* applies to the instant case and precludes Siddhantam from bringing a due process claim premised on the denial of Smith's I-130 petition.

Siddhantam further argues that the improper marriage fraud finding deprives him of his ability to remain in the United States, where he has a wife, property, and a "lifestyle." Pl.'s Br. 9. Siddhantam argues that the real property he owns in Carrollton is the type of traditional property interest to which due process attaches. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972) (noting that ownership of real estate is the type of property interest protected by due process). However, the denial of the I-130 petition, like the denial of the visa petition in *Kerry*, does not deprive Siddhantam of his property. Further, as in *Kerry*, the denial of the I-130 petition does not delegitimize Siddhantam's marriage, and he and Smith remain able to be married and live together outside of the United States. *See Bangura*, 434 F.3d at 496 ("A denial of an immediate relative visa does not infringe upon [the] right to marry."). Therefore, the Court dismisses Siddhantam's due process cause of action for failure to state a claim.

### ii. *The APA*

Siddhantam's argument that he is only challenging the INA § 204(c) order[4] precludes him from stating a claim under the APA. An APA claim arises only from a final agency action–here,

---

[4] *See* Pl.'s Br. 1 ("To be perfectly clear—Mr. Siddhantam's legal claims do not amount to a disagreement with the substantive denial of Smith's I-130 petition . . . .").

the denial of the I-130. *See Bennett*, 520 U.S. at 177-78; *see also Bangura*, 434 F.3d at 501 (holding that fraud finding did not constitute final agency action under APA). Thus, Siddhantam could only challenge the I-130 denial under the APA, and, as noted above, he lacks standing to do so.

### iii. *Equitable Estoppel*

Finally, Siddhantam seems to allege that his claim of governmental misconduct gives rise to an equitable estoppel claim. Equitable estoppel is rarely valid against the government. *See, e.g., Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011) ("Courts have been exceedingly reluctant to grant equitable estoppel against the government.").

> If estoppel against the government is available, the party seeking estoppel must establish five things: (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on the government's conduct and as a result of his reliance, suffered substantial injury.

*Id.* (citing *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997)). The Amended Complaint only addresses this analytical framework in a vague and conclusory manner. To the extent that Siddhantam is now attempting to pursue a separate affirmative misconduct claim, the Court grants the Motion to Dismiss as to this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss. Siddhantam's claims are dismissed with prejudice.

**SO ORDERED.**
SIGNED August 24, 2018

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE